Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 0186 | **DATE** | 10/18/2002 |
| **CASE TITLE** | Rhodina Covington-McIntosh, et al. vs. Mt. Glenwood Memory Gardens, South, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Memorandum Opinion and Order entered. It is hereby ordered that Plaintiffs' Motion to Enforce Settlement be, and the same hereby is, **DENIED**, as to Plaintiffs' requests under Parts I and II of the Consent Decree. It is further ordered that Plaintiffs' Motion to Enforce Settlement be, and the same hereby is, **GRANTED**, as to Plaintiffs' requests under Part III of the Consent Decree. *AK*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | date docketed | 59 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| AC | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RHODINA COVINGTON-MCINTOSH,[1]<br>SONJA WASHINGTON,<br>ROSA P. HAMILTON,<br>REFUGIA HAIRE,<br>ANASTASIA MOLINA,<br>MARGARET BERNAL,<br>MAIDA BROWN,<br>YVONNE CORNISH, and<br>DORIS RAY,<br>on behalf of themselves and<br>others similarly situated,<br><br>      Plaintiffs,<br><br>      v.<br><br>MOUNT GLENWOOD MEMORY<br>GARDENS, SOUTH INC., a/k/a MOUNT<br>GLENWOOD SOUTH;[2] MOUNT<br>GLENWOOD MEMORY GARDENS<br>WEST, INC., a/k/a MOUNT GLENWOOD<br>WEST,<br><br>      Defendants.[3] | Case No. 00 C 0186<br><br>Magistrate Judge<br>Arlander Keys |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiffs Rhodina Covington-McIntosh,

Sonja Washington, Rosa P. Hamilton, Refugia Haire, Anastasia

---

[1] In the Complaint, "McIntosh" was erroneously spelled "MacIntosh."

[2] This party was incorrectly named in the suit as "Mount Glenwood Memory Gardens, Inc."

[3] As part of the Settlement Agreement, Willard I. Timmer and Evergreen Hills Memory Gardens, Inc. were dismissed as Defendants. (*Covington-McIntosh, et al. v. Mount Glenwood Memory Gardens, South, Inc., et al.*, No. 00-C 0186, Minute Order (N.D. Ill. June 15, 2001.)

1

Molina, Margaret Bernal, Maida Brown, Yvonne Cornish, and Doris Ray's Motion to Enforce Settlement. For the reasons set forth below, Plaintiffs' Motion to Enforce Settlement is granted in part and denied in part.

## BACKGROUND

### A. Factual History

On January 11, 2000, Plaintiffs Rhodina Covington-McIntosh, Sonja Washington, Rosa P. Hamilton, Refugia Haire, Anastasia Molina, Margaret Bernal, Maida Brown, Yvonne Cornish, and Doris Ray (hereinafter, collectively "Plaintiffs") filed a civil rights action for violations of 42 U.S.C. §§ 1981-1982 against Defendants, Mount Glenwood Memory Gardens South, Inc., a/k/a Mount Glenwood South ("Glenwood South") and Mount Glenwood Memory Gardens West, Inc., a/k/a Mount Glenwood West ("Glenwood West"). Plaintiffs have relatives buried in either of two Defendant cemeteries, Glenwood South and Glenwood West. (Compl. at 3, 4.)

On November 28, 2000, the district court referred the case at bar to this Court for a settlement conference. At the settlement conference, the parties agreed to enter into a settlement agreement (the "Settlement Agreement"). The essential points of the Settlement Agreement include class certification of the Plaintiffs[4] and a consent decree (the "Consent Decree")

---

[4] The class certification was designated for settlement purposes only. (Settlement Agreement ¶ 6.)

outlining improvements to be made at both Glenwood South and Glenwood West over a two-year period. (Pls.' Mot. to Enforce Settlement at 2.) Over the next five months, the parties continued negotiating the terms of the Consent Decree, and on approximately June 15, 2001, Plaintiffs and Defendants finalized and signed the Settlement Agreement. (*Id.* at 2.)

Pursuant to the terms of the Settlement Agreement and Parts I and II of the Consent Decree, Defendants are required to make specific improvements to the grounds and grave sites[5] at Glenwood South and Glenwood West and general improvements to the procedures and operations[6] at the cemeteries by August 2003. (Settlement Agreement, App. A at ¶ 31-35.) Pursuant to Part III

---

[5] Improvements to the grounds and grave sites include cutting down and removing dead trees, maintaining the gravel roads to prevent flooding, replacing the chain link fence at Glenwood West, and creating a screened-off area for storage of vaults and equipment. (Settlement Agreement, App. A at ¶¶ 2, 5, 12, 14, 18.) Further, Defendants must provide sufficient numbers of trash receptacles, emptying such receptacles as needed; provide operational water faucets; and either keep the cemetery offices open or provide portable toilet facilities on holidays. (*Id.* at ¶¶ 20-21, 25.) Defendants must also remove evergreen grave covers and plastic decorations, as appropriate; replace chipped or cracked vases and headstones; and remove old and rusty canopies. (*Id.* at ¶¶ 1, 10, 15, 26.) Finally, Defendants are prohibited from using manure as fertilizer and using broken vaults or headstones as landfill. (*Id.* at ¶¶ 7-8.)

[6] Defendants must establish procedures to ensure that employees use care when working close to decorations and grave markers, ensure that graves are closed and filled within twenty-four hours of burial, ensure that the grounds are inspected for holes, and establish bi-annual "walk-thru's" to clean up any remaining debris at Glenwood South and Glenwood West. (*Id.* at ¶¶ 27-30.)

3

of the Consent Decree, Defendants must also replace specific headstones and cement bases for the named Plaintiffs by September 30, 2001.[7] (*Id.* at ¶ 36.)

On June 3, 2002, Plaintiffs filed a Motion to Enforce Settlement (the "Motion"), alleging that Defendants have failed to fully comply with certain provisions of the Consent Decree at both Glenwood South and Glenwood West.[8] (Pls.' Mot. to Enforce Settlement at 1.) Plaintiffs allege that grave sites are subsiding and are not being brought back to level,[9] the cemetery roadways are flooding, and that Defendants are not sufficiently inspecting the grounds for holes.[10] (*Id.* at 2-3.) Plaintiffs

---

[7] Under the terms of the Consent Decree, the named Plaintiffs were each promised new or reinstalled headstones or cement bases, as individually required. (*Id.* at ¶¶ 31-35.)

[8] Plaintiffs acknowledge that Defendants have complied with portions of the Settlement Agreement and Consent Decree. Thus, Plaintiffs only seek performance of the remaining provisions of the Consent Decree, which have yet to be fully executed. (Pls.' Mot. to Enforce Settlement.)

[9] Plaintiffs' Motion alleged that the grave sites of Sonja Washington's relatives were subsiding. (Pls.' Mot. to Enforce Settlement at 3.) However, at the August 26, 2002 evidentiary hearing, the Court struck any references to Ms. Washington's relatives, on the grounds that no evidence was provided to support the allegation that the particular graves belonged to her relatives. (Hr'g at 149 - 150.)

[10] At the evidentiary hearing, the Court struck Plaintiffs' allegation that flooding has caused erosion of burial sites located near the roadways. (Hr'g at 147.) The Court found that Plaintiffs failed to provide any evidence to support their allegation that burial sites have eroded. (*Id.*)

4

further allege that Defendants persist in using broken vaults as landfill; have not designated a screened-off area for unused vaults; and have stacked vaults in front of cemetery offices, which gives the appearance of mass burials. (*Id.* at 2-4.) Plaintiffs further allege that Defendants have not removed the evergreen grave covers; the plastic decorations; the "dead, cut trees;" or the rusting canopies. (*Id.* at 2-3.) Lastly, Plaintiffs allege that Defendants have not yet installed the replacement headstones and cement bases required under the Consent Decree for several of the named Plaintiffs.[11] (*Id.* at 4; Settlement Agreement, App. A at ¶¶ 31-36.)

## B. Evidentiary Hearing

On August 26, 2002, the Court held an evidentiary hearing on Plaintiffs' Motion. Plaintiff Refugia Haire testified to the conditions she observed at Glenwood West since the Settlement Agreement was signed. According to Ms. Haire, although some of

---

[11] Several other allegations were struck at the evidentiary hearing, on the grounds that Plaintiffs did not produce any evidence to support such allegations. Specifically, the Court struck the allegations that "Public Aid" burials have not been marked for identification; that open graves have not been covered within twenty-four hours of burials and have been left covered only with wooden planks for an indefinite amount of time; that employees are not using appropriate care in maintaining the grounds; that the family cement marker for one of the named Plaintiffs, Covingtion-McIntosh, has not been reinstalled; and that replacement headstones and bases that were damaged by Defendants' employees have not been replaced. (Hr'g 145 - 146, 149, 152, 153.)

5

the trunks have been removed, Defendants have not removed all the dead trees and stumps at Glenwood West. (Hr'g at 10-12.) Ms. Haire also testified that she has seen gravel on the grave sites(*id.* at 13-16), broken vaults and headstones on grave sites (*id.* at 20-21, 48-49, 67-69), plastic decorations remaining on grave sites (*id.* at 19), new section markers fallen to disrepair (*id.* at 12-13), vaults stacked in front of the cemetery office (*id.* at 23-24), damaged bases and headstones on grave sites (*id.* at 26-28), flooding in some areas (*id.* at 16, 55-61), and graves sunken into the ground creating holes on the surface. (*Id.* at 27-32).

Another Plaintiff, Sonja Washington, testified to the conditions at Glenwood South, where she has seen that some of the "dead and cut trees" have not been removed (*id.* at 97 – 102), she saw that gravel was used to fill a hole on a sunken grave site (*id.* at 103 – 105), and she saw standing water on some of the unpaved roadways. (*Id.* at 105 – 110). Ms. Washington also testified that she saw graves sunken to the point where the vaults are visible. (*Id.* at 112 – 114.)

Since the signing of the Settlement Agreement, the ownership of Glenwood South and Glenwood West has changed. (Hr'g at 76.) The original owner[12] sold both Glenwood South and Glenwood West

---

[12] Mr. Timmer was the original owner of Glenwood South and Glenwood West and had been named as a Defendant in the Complaint. (Compl. at 2.) However, Mr. Timmer was dismissed as a Defendant

to his daughter and her husband, Marilyn and Michael Walsh,[13] on December 31, 2001. (*Id.*) The Walshes moved to Illinois from Florida in January 2002 to operate and manage both Glenwood South and Glenwood West. (*Id.* at 76, 82, 168, 200-201.) As the new owners, the Walshes have purchased new equipment and replaced office and maintenance personnel at both cemeteries. (*Id.* at 173-178.) The Walshes have updated Glenwood South and Glenwood West's operational procedures to require certain minimum standards of performance and will issue memorandums, when necessary, notifying employees of work that must be done. (*Id.* at 170, 181-184.) The Walshes have put a process in place to address customer complaints (*id.* at 84, 161-162), and they have made their employees aware of their responsibilities under the Settlement Agreement. (*Id.* at 176, 187-188).

Defendants acknowledge that they are not yet fully compliant with the Consent Decree. (*Id.* at 5, 183.) The Walshes testified that they first became aware of the Settlement Agreement and Consent Decree in April 2002. (Hr'g at 76, 172.) In response, the Walshes have held staff meetings to discuss the need to keep

---

within the terms of the Settlement Agreement, although he remained bound by its terms until he sold the cemeteries to Mr. and Mrs. Walsh on December 31, 2001. (Settlement Agreement ¶ 7, 20; Hr'g. at 76.)

[13] As owners of Glenwood South and Glenwood West, Marilyn and Michael Walsh are bound by the Settlement Agreement and Consent Decree. (Settlement Agreement ¶ 7.)

the cemeteries clean and make the necessary improvements. (*Id.* at 165.) The Walshes have instructed their staff not to use broken headstones and vaults as landfill and have created a process to store broken headstones and vault pieces in a maintenance area until the pieces can be removed or returned to the manufacturer. (*Id.* at 88-91.) Defendants have also instituted a complaint process whereby a work order is issued when a customer brings a complaint to the office. (*Id.* at 82, 84.) Mr. Walsh testified that they have minimized flooding and standing water on dirt roads in Glenwood South and Glenwood West by adding gravel to low areas and maintaining the draining systems installed by the previous owner. (*Id.* at 86-88.) Defendants further testified that the flooding, which Ms. Haire and Ms. Washington testified that they witnessed, occurred immediately following a major rainstorm or was the result of the spring thaw, but, either way, was quickly cleaned up. (*Id.* at 57, 60, 77-78, 158.)

Defendants testified that they have created fenced-off storage and maintenance areas at Glenwood South and Glenwood West. (Hr'g at 213.) Mrs. Walsh testified that the vaults, which the Plaintiffs saw outside of the storage area, were set up for burials to take place in the cemetery the next day. (*Id.* at 213-214.) Mrs. Walsh also testified that they replaced the

8

rusting canopies early in the summer of 2002. (*Id.* at 172-173.) Defendants agree that the practice of using gravel to fill grave sites is unacceptable; they suspect that the gravel the Plaintiffs saw may have been put on the grave sites by family or friends of the deceased as part of a tradition where gravel is put on the grave site as a tribute. (*Id.* at 185.) Mrs. Walsh testified that the maintenance staff is monitoring the grounds for holes and the Walshes have instructed the maintenance staff to fill any holes with dirt, purchased specifically for that purpose. (*Id.* at 174.)

Mr. and Mrs. Walsh further testified that they have made significantly more improvements and have spent more time and money on improving Glenwood South than Glenwood West. (*Id.* at 180.) Mrs. Walsh testified that she and Mr. Walsh intend to bring Glenwood South to the level of quality appropriate for a cemetery and then focus on improving Glenwood West. (*Id.* at 183.)

Finally, both Plaintiffs and Defendants testified that headstones and cement bases for specific named Plaintiffs, as listed in Part III of the Consent Decree, with the exception of the Covington-McIntosh family cement marker, have not yet been replaced. (Hr'g at 44, 124, 186.) Mrs. Walsh testified that Defendants have not yet replaced the other markers and cement bases, because they want to meet with Plaintiffs to ensure that

9

the proper headstones and lettering are ordered. (*Id.* at 186-187.)

**DISCUSSION**

The issue before the Court is whether Defendants are failing to perform under the Settlement Agreement by not having fully complied with their obligations as set forth in the Consent Decree. Plaintiffs presented evidence in the form of testimony and photographs to show that Defendants have not met all of their obligations under the Settlement Agreement. Defendants argue that they have made some of the improvements required under the Settlement Agreement and continue to make the necessary changes. Defendants further argue that they should not be compelled to immediately complete all of the remaining work, as Plaintiffs seek, because there is still a year remaining within which to fully comply with the terms of the Settlement Agreement.

A federal court will look to the applicable state law when construing the terms of a settlement agreement.[14] *Capri Sun, Inc. v. Beverage Pouch Systems, Inc.*, 2000 U.S. Dist. LEXIS 10966, No. 00 C 1961, 2000 WL 1036016, at *2 (N.D. Ill. July 21, 2000) (*citing Allstate Financial Corp. v. Utility Trailer of*

---

[14] In this case, the Court has proper jurisdiction pursuant to 28 U.S.C. § 1331 based upon a question arising under the laws of the United States. In addition, as a term of the Settlement Agreement, the Court retained jurisdiction to enforce the provisions of the Settlement Agreement and Consent Decree. (Settlement Agreement at ¶ 5).

*Ill., Inc.*, 936 F. Supp. 525, 527 (N.D. Ill. 1996)). In Illinois, a motion to enforce a settlement agreement is treated the same as a motion to enforce a contract. *Id.* As a result, the rules applicable to interpreting a settlement agreement are the same as those for ordinary contract construction. *Holloway v. J.C. Penney Life Ins. Co.*, 2001 U.S. Dist. LEXIS 15471, No. 97 C 4555, 2001 WL 1159444 at *4 (N.D. Ill. Sept. 28, 2001) *(citing LaSerage Tech. Corp. v. LaSerage Labs, Inc.*, 972 F.2d 799, 802 (7th Cir. 1992)).

Full performance of a settlement agreement is found if a party makes good faith efforts to perform its obligations during the term of the settlement agreement. *Zinn v. Parrish,* 644 F.2d 360, 366 (7th Cir. 1981)(finding that an agent's consistent, good faith efforts to find off-season employment for a player met his contractual obligations, even though the agent never found the player a job). Further, when looking at performance under a contract, substantial performance is enough. *Employers Ins. v. Browner*, 52 F.3d 656, 664 (7th Cir.) *(citing Hardin, Rodriquez & Boivin Anesthesiologists, Ltd. v. Paradigm Ins. Co.*, 962 F.2d 628, 636 (7th Cir. 1992); *Jacob & Youngs, Inc. v. Kent,* 129 N.E. 889, 892 (N.Y. 1921)).

In this case, based on the deadlines assigned in the Settlement Agreement, the tasks that Defendants must perform

11

under the Consent Decree can be divided into two categories: Parts I and II of the Consent Decree and Part III of the Consent Decree. The obligations listed in Parts I and II must be completed by the end of the two-year period, August 2003. The deadline for full performance of the obligations listed in Part III was September 30, 2001. In their Motion, Plaintiffs allege that Defendants have failed to meet their obligations in both categories and allege that much work remains unperformed.

The Court finds that Defendants have made good faith efforts towards completing the necessary improvements to Glenwood South and Glenwood West pursuant to the provisions in Parts I and II of the Consent Decree. Mrs. Walsh has extensive experience working in cemeteries, and both Mr. and Mrs. Walsh have expressed a reasonably clear understanding of what is necessary to effectively operate Glenwood South and Glenwood West. At the evidentiary hearing, Mrs. Walsh communicated a clear distaste for the overall conditions at Glenwood South and Glenwood West when she and Mr. Walsh took ownership. Based on the testimony and the photographs presented at the hearing the Court agrees that the conditions, as they existed under the former ownership, were deplorable but that they are improving. However, much work still remains to be done.

Further, the Walshes have invested a significant amount of money to improve maintenance and operations at Glenwood South and Glenwood West. Therefore, the Court finds that Defendants have substantially complied with Parts I and II of the Consent Decree.

Next, the Court finds that Defendants have not replaced the necessary headstones and bases as required by Part III of the Consent Decree. The Consent Decree requires that the replacements be completed by September 30, 2001, but according to testimony from both Plaintiffs and Defendants, the work remains unperformed. The Court applauds Defendants' desire to work together with Plaintiffs to ensure that the proper replacement headstones and bases are used. However, pursuant to the language of the Consent Decree, the burden was on Defendants to ensure that this work was performed within the required time frame. Therefore, the Court orders Defendants to replace the headstones and cement bases referred to in Part III of the Consent Decree, to the extent that they have not yet performed this task. As a result of the deadline for performance under Part III having already expired, Defendants have sixty days from the date of this Memorandum Opinion to complete the work.

## CONCLUSION

The Court holds that Defendants have substantially complied with Parts I and II of the Consent Decree and have shown good

faith efforts to fully comply with the terms of the Settlement Agreement and Consent Decree before the expiration of the two-year time period. However, Defendants did not substantially comply with Part III of the Consent Decree by the September 30, 2001 deadline.

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Enforce Settlement be, and the same hereby is, **DENIED,** as to Plaintiffs' requests under Parts I and II of the Consent Decree.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Enforce Settlement be, and the same hereby is, **GRANTED,** as to Plaintiffs' requests under Part III of the Consent Decree. Defendants have sixty days from the date hereof to complete work and comply with this order.

DATED: October 18, 2002      E N T E R:

_____
ARLANDER KEYS
United States Magistrate Judge

14