# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 186 | DATE | 10/14/2003 |
| CASE TITLE | Covington-McIntosh et al. vs. Mt. Glenwood Memory Gardens | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

## DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum Opinion and Order entered. Plaintiffs' Motion to Enforce Settlement [#77] is hereby **denied**. Further, Plaintiffs' Motion to extend jurisdiction over Consent Decree [#77] is also **denied**. *AK*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | Document Number |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | OCT 15 2003 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | 81 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 10/14/2003 date mailed notice | |
| | FT/*lucy* courtroom deputy's initials | Date/time received in central Clerk's Office | FT mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RHODINA COVINGTON-MCINTOSH,<br>SONJA WASHINGTON,<br>ROSA P. HAMILTON,<br>REFUGIA HAIRE,<br>ANASTASIA MOLINA,<br>MARGARET BERNAL,<br>MAIDA BROWN,<br>YVONNE CORNISH, and<br>DORIS RAY,<br>on behalf of themselves and<br>others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MOUNT GLENWOOD MEMORY<br>GARDENS, SOUTH INC., a/k/a MOUNT<br>GLENWOOD SOUTH; MOUNT<br>GLENWOOD MEMORY GARDENS<br>WEST, INC., a/k/a MOUNT GLENWOOD<br>WEST,<br><br>Defendants.[1] | Case No. 00 C 0186<br><br>Magistrate Judge<br>Arlander Keys<br><br>DOCKETED<br>OCT 1 5 2003 |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs Rhodina Covington-McIntosh, Sonja Washington, Rosa P. Hamilton, Refugia Haire, Anastasia Molina, Margaret Bernal, Maida Brown, Yvonne Cornish, and Doris Ray's Report on Defendants' Compliance with the Consent Decree. For the reasons set forth below, the Court finds that Defendants have substantially complied with the Consent Decree.

---

[1] As part of the Settlement Agreement, Willard I. Timmer and Evergreen Hills Memory Gardens, Inc. were dismissed as Defendants. (*Covington-McIntosh, et al. v. Mount Glenwood Memory Gardens, South, Inc., et al.*, No. 00-C 0186, Minute Order (N.D. Ill. June 15, 2001.)

## BACKGROUND

### A. Factual History

On January 11, 2000, Plaintiffs Rhodina Covington-McIntosh, Sonja Washington, Rosa P. Hamilton, Refugia Haire, Anastasia Molina, Margaret Bernal, Maida Brown, Yvonne Cornish, and Doris Ray (hereinafter, collectively "Plaintiffs") filed a civil rights action for violations of 42 U.S.C. §§ 1981-1982 against Defendants, Mount Glenwood Memory Gardens South, Inc., a/k/a Mount Glenwood South ("Glenwood South") and Mount Glenwood Memory Gardens West, Inc., a/k/a Mount Glenwood West ("Glenwood West"). Plaintiffs have relatives buried in Glenwood South or Glenwood West, and complained that conditions at both cemeteries were deplorable. (Compl. at 3, 4.)

On November 28, 2000, the district court referred the matter to this Court for settlement. At the settlement conference, the parties agreed to enter into a settlement agreement (the "Settlement Agreement"). The essential points of the Settlement Agreement include a consent decree (the "Consent Decree"), outlining improvements to be made at both Glenwood South and Glenwood West over a two-year period. (Pls.' Mot. to Enforce Settlement at 2.) Over the next five months, the parties continued negotiating the terms of the Consent Decree, and on approximately June 15, 2001, Plaintiffs and Defendants finalized and signed the Settlement Agreement.

Pursuant to the terms of the Settlement Agreement and Parts I and II of the Consent Decree, Defendants were required to make specific improvements to the grounds and grave sites[2] at Glenwood South and Glenwood West, and general improvements to the procedures and operations[3] at the cemeteries by August 2003. (Settlement Agreement, App. A at ¶ 31-35.) Pursuant to Part III of the Consent Decree, Defendants were also required to replace specific headstones and cement bases for the named Plaintiffs by September 30, 2001.[4] (Id. at ¶ 36.)

---

[2] Improvements to the grounds and grave sites include cutting down and removing dead trees, maintaining the gravel roads to prevent flooding, replacing the chain link fence at Glenwood West, and creating a screened-off area for storage of vaults and equipment. (Settlement Agreement, App. A at ¶¶ 2, 5, 12, 14, 18.) Further, the Settlement Agreement required Defendants to provide sufficient numbers of trash receptacles, emptying such receptacles as needed; provide operational water faucets; and either keep the cemetery offices open or provide portable toilet facilities on holidays. (Id. at ¶¶ 20-21, 25.) Defendants also agreed to remove evergreen grave covers and plastic decorations, as appropriate; replace chipped or cracked vases and headstones; and remove old and rusty canopies. (Id. at ¶¶ 1, 10, 15, 26.) Finally, Defendants were prohibited from using manure as fertilizer and using broken vaults or headstones as landfill. (Id. at ¶¶ 7-8.)

[3] Defendants were required to establish procedures to ensure that employees use care when working close to decorations and grave markers, to ensure that graves are closed and filled within twenty-four hours of burial, to ensure that the grounds are inspected for holes, and to establish bi-annual "walk-thru's" to clean up any remaining debris at Glenwood South and Glenwood West. (Id. at ¶¶ 27-30.)

[4] Under the terms of the Consent Decree, the named Plaintiffs were each promised new or reinstalled headstones or cement bases, as individually required. (Id. at ¶¶ 31-35.)

On June 3, 2002, Plaintiffs filed a Motion to Enforce Settlement (the "Motion"), alleging that Defendants had failed to fully comply with certain provisions of the Consent Decree at both Glenwood South and Glenwood West.[5] (Pls.' Mot. to Enforce Settlement at 1.) Plaintiffs alleged that grave sites were subsiding and were not being brought back to level,[6] the cemetery roadways were flooding, and that Defendants were not sufficiently inspecting the grounds for holes.[7] (*Id.* at 2-3.) Plaintiffs further alleged that Defendants had persisted in using broken vaults as landfill; had not designated a screened-off area for unused vaults; and had stacked vaults in front of cemetery offices, which gave the appearance of mass burials. (*Id.* at 2-4.) Plaintiffs further alleged that Defendants had not removed the evergreen grave covers; the plastic decorations; the "dead,

---

[5] Plaintiffs acknowledged that Defendants had complied with portions of the Settlement Agreement and Consent Decree. Thus, Plaintiffs only sought performance of the remaining provisions of the Consent Decree, which had yet to be fully executed. (Pls.' Mot. to Enforce Settlement.)

[6] Plaintiffs' Motion alleged that the grave sites of Sonja Washington's relatives were subsiding. (Pls.' Mot. to Enforce Settlement at 3.) However, at the August 26, 2002 evidentiary hearing, the Court struck any references to Ms. Washington's relatives, on the grounds that no evidence was provided to support the allegation that the particular graves belonged to her relatives. (Hr'g at 149 - 150.)

[7] At the evidentiary hearing, the Court struck Plaintiffs' allegation that flooding had caused erosion of burial sites located near the roadways. (Hr'g at 147.) The Court found that Plaintiffs failed to provide any evidence to support their allegation that burial sites had eroded. (*Id.*)

4

cut trees;" or the rusting canopies. (*Id.* at 2-3.) Lastly, Plaintiffs alleged that Defendants had not yet installed the replacement headstones and cement bases required under the Consent Decree for several of the named Plaintiffs. (*Id.* at 4; Settlement Agreement, App. A at ¶¶ 31-36.)

In response, Defendants noted that, since the signing of the Settlement Agreement, the ownership of Glenwood South and Glenwood West had changed. (Hr'g at 76.) The original owner[8] sold both cemeteries to his daughter and son-in-law, Jeanne and Michael Walsh,[9] on December 31, 2001. (*Id.*) The Walshes moved to Illinois from Florida in January 2002 to operate and manage both Glenwood South and Glenwood West. (*Id.* at 76, 82, 168, 200-201.)

Within months of assuming ownership, the Walshes purchased new equipment and replaced office and maintenance personnel at both cemeteries. (*Id.* at 173-178.) The Walshes updated Glenwood South and Glenwood West's operational procedures to require certain minimum standards of performance and issued memorandums, when necessary, notifying employees of work that must be done.

---

[8] Mr. Timmer was the original owner of Glenwood South and Glenwood West and had been named as a Defendant in the Complaint. (Compl. at 2.) However, Mr. Timmer was dismissed as a Defendant within the terms of the Settlement Agreement, although he remained bound by its terms until he sold the cemeteries to Mr. and Mrs. Walsh on December 31, 2001. (Settlement Agreement ¶ 7, 20; Hr'g. at 76.)

[9] As owners of Glenwood South and Glenwood West, Jeanne and Michael Walsh are bound by the Settlement Agreement and Consent Decree. (Settlement Agreement ¶ 7.)

5

(*Id.* at 170, 181-184.) The Walshes put a process in place to address customer complaints (*id.* at 84, 161-162), and made their employees aware of their responsibilities under the Settlement Agreement. (*Id.* at 176, 187-188).

At the August 26, 2002 hearing, Defendants acknowledged that they were not then fully compliant with the Consent Decree. (*Id.* at 5, 183.) The Walshes testified that they first became aware of the Settlement Agreement and Consent Decree in April 2002. (Hr'g at 76, 172.) In response, the Walshes held staff meetings to discuss the need to keep the cemeteries clean and make the necessary improvements. (*Id.* at 165.) The Walshes instructed their staff not to use broken headstones and vaults as landfill, and had created a process to store broken headstones and vault pieces in a maintenance area until the pieces can be removed or returned to the manufacturer. (*Id.* at 88-91.) Defendants had also instituted a complaint process whereby a work order is issued when a customer brings a complaint to the office. (*Id.* at 82, 84.) Mr. Walsh testified that they had minimized flooding and standing water on dirt roads in Glenwood South and Glenwood West by adding gravel to low areas and maintaining the draining systems installed by the previous owner. (*Id.* at 86-88.)

On October 21, 2002, the Court granted Plaintiffs' Motion in part, and denied Plaintiffs' Motion in part. *Covington-McIntosh v. Mount Glenwood memory Gardens South, Inc. et al.*, No. 00 C

0186, 2002 WL 31369747 (N.D. Ill. Oct. 21, 2002). The Court concluded that Defendants had substantially complied with Parts I and II of the Consent Decree, which obligated Defendants to improve maintenance and operations at Glenwood South and Glenwood West by August of 2003. *Id.* at *4. However, the Court found that Defendants had failed to comply with Part III of the Consent Decree, which required Defendants to replace certain headstones and cement bases by September 30, 2001. *Id.*

Less than a year later, however, Plaintiffs returned to Court, complaining that Defendants were not instituting changes required by the terms of the Consent Decree. On June 9, 2003, Plaintiffs filed with the Court a Report summarizing their concerns about Defendants' alleged failure to fulfill their obligations under the Consent Decree. Defendants filed a Response to Plaintiffs' Report on July 7, 2003. On September 3, 2003, the Court held an evidentiary hearing on the matter.

Plaintiffs Rosa Hamilton and Sonja Washington testified in support of Plaintiffs' position at the September 3rd hearing. Consistent with Plaintiffs' Report, Ms. Hamilton and Ms. Washington complained that Defendants violated the Consent Decree by: 1) failing to completely remove the stumps from dead trees that had been cut down, as required by ¶ 2 of the Consent Decree; 2) neglecting to maintain section markers, in violation of ¶ 3 of the Consent Decree; 3) failing to maintain the roadways by

permitting the erosion of certain burial sites, in violation of ¶ 5 of the Consent Decree; 4) failing to maintain the grass and landscaping, contrary to ¶ 6 of the Consent Decree; 5) neglecting to establish a screened off area for storage of vaults, in violation of ¶ 12 of the Consent Decree; 6) failing to maintain fencing and to police trespassers, contrary to Defendants' obligation under ¶¶ 14 and 22 of the Consent Decree; 7) failing to provide usable water spigots, as is required by ¶ 21 of the Consent Decree; 8) neglecting to empty trash containers, in violation of ¶ 25 of the Consent Decree; 9) permitting employees to exercise a lack of care in maintaining the grounds, in violation of ¶¶ 27 and 29 of the Consent Decree; and 10) failing to properly care for holes, as is required by ¶ 30 of the Consent Decree.

In addition, Plaintiffs Washington and Brown complained about the condition of the replacement headstones Defendants were required to install, pursuant to Part III of the Consent Decree. Specifically, Ms. Washington approved of the headstone that was ordered on her behalf for her grandmother's gravesite, but was upset that the stone had not yet been set. Although the headstone ordered for Ms. Brown's mother was acceptable and had been set, the headstone was difficult to locate and had been shifted out of its placement.

Defendants countered Plaintiffs' evidence with the testimony of Glenwood cemetery owners Jeanne and Michael Walsh, and Glenwood cemetery employees Gregory Wilson, Kacy Johnson, Roger Burton, and Margaret Nichols. Defendants' witnesses testified that, as of the date of the hearing, only two dead trees were present at the cemeteries[10]. Defendants admitted, however, that they had waited until August of 2003 to remove many of the trees. These witnesses further explained that the two remaining dead trees were not cut down because telephone cable and wire run through the trees, and that the trees had to remain in place to support those cables and wires. *See, e.g.,* Mrs. Walsh's testimony, 9/03/03/ trans. at p. 104 .

Defendants also attacked Plaintiffs' claim that the cemeteries were littered with "partially dead trees." Defendants' witnesses explained that Plaintiffs had improperly labeled as dead a live tree that happened to have a hole in it; had complained about a tree that had been taken down and chopped up and was in the process of being removed; and had improperly objected to tree stumps that were not removed because they served as cemetery markers. *Id.* at p. 106-111; Mr. Wilson's testimony, 9/03/03 trans. at p. 126.

---

[10] On cross examination, Ms. Hamilton admitted that the only two dead trees that she saw were located in front of the main office building, 9/03/03 Trans. at p. 34, but complained that there were other "partially dead trees" in the cemeteries. *Id.* at p. 35.

9

Mr. and Mrs. Walsh acknowledged that there was a problem with maintaining section markers, which they had created and installed pursuant to the terms of the Consent Decree. The Walshes explained that the markers were being repeatedly vandalized and replaced. Mrs. Walsh's testimony, 9/03/03 trans. at p.93.; Mr. Walsh's testimony. 9/03/03 trans. at p. 170. In an effort to solve the problem, Mr. Walsh ordered aluminum signs that would be drilled to – as opposed to hung from –- posts to deter vandalism in the future. *Id.* at pp. 170-71.

Cemetery employees also testified about improved maintenance and procedures at the cemeteries. Mount Glenwood West manager Gregory Wilson testified that he and his employees continually inspect the grounds, and that holes -- an unavoidable side effect of past burial practices – were continually being repaired. Mr. Wilson's testimony, 9/03/03 trans. at pp. 124-26. Mr. Wilson described the new owners' efforts to remove dead trees, the extensive efforts to maintain the landscaping, and the existence of operational water spigots. *Id.* at pp. 124-27. Mr. Wilson also explained that the only tall weeds remaining on cemetery grounds were those growing in a deep ravine, which served as a visual marker to prevent visitors from falling into the ravine. *Id.* at 124-25.

Mr. Wilson also described Defendants' efforts to combat trespassers. *Id.* at p. 132. Mr. Wilson testified that the

10

cemetery is bordered by private homes and a construction site, offering easy access to the cemetery. *Id.* at 132-33. Although Mr. Wilson and other employees patrol the cemetery grounds, they are unable to completely eliminate trespassers. *Id.*

Mr. Walsh testified that the vaults, which had previously been stacked up and stored in the open, had been moved and the area had been seeded, leveled, and "filled in." Mr. Walsh's testimony, 9/03/03 trans. at p. 149. He also described a fence that was installed to screen the maintenance area, noting that no one other than Ms. Washington had suggested that the fence was inadequate. *Id.* at p. 154. Both Mrs. Walsh and the cemetery employees testified that garbage is collected from the cemeteries two or three times every week. *See, e.g.,* Mrs. Walsh's testimony, 9/03/03 trans. at p. 103.

Mr. Walsh described various other improvements made pursuant to the terms of the Consent Decree, including the establishment of a system to record consumer complaints (9/03/03 trans. at p. 165); the installation of signs for the posting of public notices (*Id.* at p. 160); and the purchase of new equipment. *Id.* at 153.

At the conclusion of Mr. Walsh's testimony, the Court offered counsel the opportunity to make closing remarks. In closing, Plaintiffs' counsel largely conceded that Defendants had addressed most of the items on Plaintiffs' complaint list during the week prior to the hearing. 9/03/03 at p. 173. Counsel

noted, however, that "compliance has occurred" only because
Plaintiffs were diligent in documenting Defendants' oversights
and neglect, and only because the Court intervened and forced
Defendants to do so. *Id.*

## DISCUSSION

The issue before the Court is whether Defendants violated
the Settlement Agreement by failing to comply with their
obligations under the Consent Decree. Plaintiffs presented
evidence in the form of testimony and photographs to show that,
as of early August 2003, Defendants had not yet met all of their
obligations under the Settlement Agreement. Much of this was
countered with Defendants' own evidence that the items in dispute
had been addressed, largely, in the days and weeks prior to the
hearing. Because they have made virtually all of the repairs and
improvements required under the Consent Decree, Defendants argue,
they have substantially complied with the terms of the Settlement
Agreement.

A federal court will look to the applicable state law when
construing the terms of a settlement agreement.[11] *Capri Sun,
Inc. v. Beverage Pouch Systems, Inc.*, 2000 U.S. Dist. LEXIS
10966, No. 00 C 1961, 2000 WL 1036016, at *2 (N.D. Ill. July 21,

---

[11] In this case, the Court has proper jurisdiction pursuant to 28
U.S.C. § 1331 based upon a question arising under the laws of the
United States. In addition, as a term of the Settlement
Agreement, the Court retained jurisdiction to enforce the
provisions of the Settlement Agreement and Consent Decree.
(Settlement Agreement at ¶ 5).

2000) (citing *Allstate Financial Corp. v. Utility Trailer of Ill., Inc.*, 936 F. Supp. 525, 527 (N.D. Ill. 1996)). In Illinois, courts treat motions to enforce a settlement agreement the same as motions to enforce a contract. *Id.* As a result, the rules applicable to interpreting a settlement agreement are the same as those for ordinary contract construction. *Holloway v. J.C. Penney Life Ins. Co.*, 2001 U.S. Dist. LEXIS 15471, No. 97 C 4555, 2001 WL 1159444, at *1 (N.D. Ill. Sept. 28, 2001) (citing *LaSerage Tech. Corp. v. LaSerage Labs, Inc.*, 972 F.2d 799, 802 (7th Cir. 1992)).

Full performance of a settlement agreement is found if a party makes good faith efforts to perform its obligations during the term of the settlement agreement. *Zinn v. Parrish*, 644 F.2d 360, 366 (7th Cir. 1981) (finding that an agent's consistent, good faith efforts to find off-season employment for a player met his contractual obligations, even though the agent never found the player a job). Further, when determining whether a party has performed under a contract, courts have uniformly held that substantial performance is sufficient. *Employers Ins. v. Browner*, 52 F.3d 656, 664 (7th Cir. 1995) (citing *Hardin, Rodriquez & Boivin Anesthesiologists, Ltd. v. Paradigm Ins. Co.*, 962 F.2d 628, 636 (7th Cir. 1992); *Jacob & Youngs, Inc. v. Kent*, 129 N.E. 889, 892 (N.Y. 1921)).

This Court has been involved with this case since November 28, 2000. The evidence and testimony documenting the conditions and (lack of) procedures at Mount Glenwood South and West prior to the filing of this lawsuit clearly demonstrated that such conditions and procedures were deplorable and unacceptable. Through the continuing efforts of the named Plaintiffs -- particularly their persistence in following up on compliance with the Consent Decree - much progress has been made, though not to the complete satisfaction of some of the named Plaintiffs. Plaintiffs are to be commended for their dogged persistence in negotiating the terms of, and ensuring compliance with, the Consent Decree.

Nevertheless, there is little dispute that both Mount Glenwood South and West have undergone substantial improvements, consistent with the terms of the Settlement Agreement and Consent Decree. The Walshes have purchased new equipment, hired new, experienced staff, instituted procedures for filing complaints, made repairs, removed dead trees, improved maintenance and landscaping, filled holes, removed plastic decorations, installed fencing, and repaired water spigots.

The changes were not gratuitous - the Consent Decree obligated Defendants to undertake these improvements. And some of Defendants' efforts have clearly missed the mark. For example, by their own admission, Defendants have been unable to

control trespassers, and they don't appear to have a workable solution to the problem. While Defendants seem to be moving closer to satisfying Plaintiffs' demands for proper gravesite markers, this issue should have been resolved two years ago. A solution to the disappearing section marker problem, however, appears to be well in hand.

After reviewing all of the testimony and evidence, the Court concludes that Defendants' good faith efforts constitute substantial compliance with the terms of the Consent Decree and Settlement Agreement. Nevertheless, Plaintiffs' complaint that Defendants' compliance came only because of their tireless efforts at documenting lapses is not without significance. Upon a properly submitted motion, the Court will consider an award of fees and costs to Plaintiffs for bringing the current motion.

## CONCLUSION

For the reasons set forth above, the Court finds that Defendants have substantially complied with the requirements of the Consent Decree. The Court acknowledges that the road to compliance has been a long one, and has required Plaintiffs to exert great effort in assuring that Defendants were fulfilling their obligations under the Consent Decree. And while conditions at the cemetery may not be perfect, neither the Consent Decree nor Illinois law require perfection to find compliance.

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Enforce Settlement be, and the same hereby is, **DENIED**.

DATED: October 14, 2003     E N T E R:

*[signature: Arlander Keys]*

ARLANDER KEYS
United States Magistrate Judge