# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 186 | **DATE** | 2/11/2004 |
| **CASE TITLE** | Covington-McIntosh et al. vs. Mt. Glenwood Memory Gardens et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum Opinion and Order entered. Plaintiffs' Fee Petition [#83] is hereby **granted in part and denied in part**. The Court awards Plaintiffs additional attorneys' fees in the amount of $18,166.50. *AK*

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | FEB 12 2004 date docketed | |
| | Notified counsel by telephone. | | | 87 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 2/11/2004 date mailed notice | |
| FT *aley* | courtroom deputy's initials | Date/time received in central Clerk's Office | FT mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RHODINA COVINGTON-MCINTOSH, ) <br> SONJA WASHINGTON, ) <br> ROSA WASHINGTON, REFUGIA HAIRE, ) <br> ANASTASIA MOLINA, MARGARET BERNAL, ) <br> MAIDA BROWN, YVONNE CORNISH and ) <br> DORIS RAY, on behalf of themselves ) <br> and Others similarly situated, ) <br> ) <br> Plaintiffs ) <br> ) <br> v. ) <br> ) <br> ) <br> ) <br> MOUNT GLENWOOD MEMORY GARDENS ) <br> SOUTH, INC a/k/a MOUNT GLENWOOD ) <br> SOUTH, MOUNT GLENWOOD MEMORY ) <br> GARDENS WEST, INC., a/k/a MOUNT ) <br> GLENWOOD WEST, ) <br> ) <br> Defendants. ) | No. 00 C 0186 <br> Magistrate Judge <br> Arlander Keys <br><br> **DOCKETED** <br> FEB 1 2 2004 |

### MEMORANDUM OPINION AND ORDER

Currently before the Court is Plaintiffs' Petition for Additional Fees and Costs. The law firm of Edelman, Combs & Latturner, LLC ("ECL") has petitioned the Court, pursuant to Section 10a(c) of the Illinois Consumer Fraud Act for that portion of the fees and expenses which were attributable to its efforts to enforce compliance with the terms of the settlement agreement signed on or about June 15, 2001. For the reasons set forth below, Plaintiffs' Petition is granted in part and denied in part.

87

**Background Facts**

Plaintiffs filed a class action lawsuit on January 11, 2000 to secure redress for alleged violations of 42 U.S.C. §§ 1981-1982 and the Illinois Consumer Fraud Act, 815 ILCS 505/2. Prior to filing the original complaints, ECL agreed to represent plaintiffs on a contingency basis. As part of this contingency agreement, ECL agreed to advance the costs and litigation expenses and to receive fees in an amount to be agreed upon among the parties through a settlement agreement or in an amount to be awarded by the Court.

On November 28, 2000, the case was referred to this Court for a settlement conference. On January 26, 2001, the settlement conference was held. In connection with the settlement conference, the parties drafted a Settlement Agreement (the "Agreement") which includes a Consent Decree (the "Decree"). On or about June 15, 2001, defendants and plaintiffs finalized and signed the Agreement. The Agreement provided, in part, that defendants would make various improvements at the cemeteries over a two-year period ending in August 2003. Pursuant to the Decree, within thirty (30) days of the signing of the Agreement, defendants paid ELC $40,000 in attorneys' fees and costs.

On June 5, 2002, plaintiffs, asserting that defendants were not making the improvements mandated by the decree, filed a motion to enforce the terms of the Agreement. A hearing was held on August 26, 2002 on plaintiffs' motion to enforce the settlement agreement. On October 18, 2002, the Court found that defendants had substantially complied with Parts I and II of the Decree, but that they had not substantially complied with Part III of the Decree by the September 30, 2001 deadline for those actions. The Court ordered that defendants would have sixty days from the date of the Court's order to complete certain work that it found should have been completed as of that time.

On June 9, 2003, plaintiffs filed a report with the Court, claiming that defendants had fallen short of full compliance with the Decree, which was set to expire two months later. On September 3, 2003, an evidentiary hearing was held. On October 14, 2003, the Court issued an Opinion and Order finding that defendants had substantially complied with the Decree and denying plaintiffs' Motion to Enforce the Settlement Agreement. Finding that much of defendants' compliance had only recently been achieved and that it was prompted by the efforts of plaintiffs, the Court indicated that it would consider awarding additional fees and costs to plaintiffs.

On October 23, 2003, plaintiffs filed a Petition for Additional Fees and Costs. According to ELC, from the time of the signing of the Agreement, until October 2003[1], the law firm incurred $42,077 in additional fees and $2,368.96 in additional costs and litigation expenses attributable to the plaintiffs' efforts to enforce compliance with the terms of the settlement agreement.

**Standards for Reviewing a Petition for Attorney's Fees in a Class Action Case**

Fee calculation is considered to be an imprecise science, and the numbers arrived at by a district court, figured to the last penny, may be seen by counsel and others to convey an "impression of exactness" that is illusory, even "delusive". *Evans v. City of Evanston*, 941 F.2d 473, 477 (7th Cir. 1991). There is no one correct formula for determining a fee award, and therefore a district court's calculation is anything but an arithmetical exercise. *Tomazzoli v. Sheedy*, 804 F.2d 93, 97 (7th Cir. 1986). Because there is no precise rule or formula for making attorney fee

---

[1]Plaintiffs state October 2001 in their Petition for Attorney's Fees and Costs, but the Court presumes that this is a typographical error.

4

determinations, a district court necessarily has discretion in choosing among the various alternatives. *Hensley v. Eckerhart*, 461 U.S. 424, 436-37 (1983). So long as the method selected is not arbitrary and is likely to arrive at a fair fee, it will not be disturbed on appeal. *Evans*, 941 F. 2d at 477. In determining the amount of a fee award, "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. 424, 437 (1983).

In *Hensley*, the Supreme Court explained that the most useful starting point for determining the amount of a "reasonable fee" is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 433. This calculation, frequently referred to as the "lodestar" figure, should provide an "objective basis" by which to value a lawyer's services. The Supreme Court emphasized the use of "billing judgment" by lawyers when deciding which hours are "properly billed to one's adversary pursuant to statutory authority." *Id.* at 434. The Court also stressed:

> Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in

private practice ethically is obligated to exclude such hours
from his fee submission. *Id.*

When "a fee petition is vague or inadequately documented," the Court "may either strike. . .problematic entries or. . .reduce the proposed fee by a reasonable percentage." *Harper v. City of Chicago Heights*, 223 F. 3d 593, 605 (7th Cir. 2000); *see also Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646, 658 (7th Cir. 1985)(upholding district court's decision to reduce vague fee entries by 15%).

## Discussion

In their Petition, plaintiffs, who were paid $40,000 in fees and costs under the terms of the settlement agreement, seek an award of additional fees and expenses pursuant to Section 10a(c) of the Illinois Consumer Fraud Act. Section 10a(c) provides that "in any action brought by a person under this Section, the Court. . . may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party."

Plaintiffs were the prevailing party in this matter. However, in defendants' Response to Plaintiffs' Petition for Additional Fees, defendants argue that only $2,000.00 in additional fees should be paid to plaintiffs.

ECL argues that, under Illinois and federal law, fees in a case such as this should be awarded on the basis of the lodestar method, in which the number of allowable hours is multiplied by an hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424 (1983) (lodestar method is "generally applicable in all cases in which Congress has authorized an award of attorney's fees to a 'prevailing party'").

### A. Reasonable Rates

An attorney's reasonable rate is the rate the attorney commands in the market, or the market rate. *People Who Care v. Rockford Board of Education School Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir. 1996)(the burden is on fee applicant to establish market rate). "The attorney's actual billing rate for comparable work is 'presumptively appropriate' to use as the market rate." Id. Additional evidence of market rate includes fees awarded to the attorney in similar cases, or "affidavits from similarly experienced attorneys attesting to the rates they charge paying clients for similar work. *Spegon v. The Catholic Bishop of Chicago*, 175 F.3d 544, 556 (7th Cir. 1999). "Once an attorney provides evidence of his billing rate, the burden is upon the defendant to present evidence establishing 'a good reason why a lower rate is essential.'" *People Who Care v. Rockford Board of Education School Dist. No. 205*, 90 F.3d 1307, 1313 (7th Cir.

7

1996)(quoting *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1151 (7th Cir. 1993).

After determining the appropriate rate, the Court may adjust the award in light of twelve factors: The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley v. Eckerhart*, 461 U.S. 424, 429-430 (1933), citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714(5th Cir. 1974).

In the case at bar, the Court finds that the fees requested by ECL must be reduced in light of the first three factors listed above. This was not a difficult case, and did not require the expenditure of a great deal of time on legal matters. ECL was successful in achieving results for the plaintiffs, and the Court finds that its attorneys' ability and performance was of high

8

quality. The Court will not lower the award for the fees and costs that ECL seeks because it was dissatisfied with ECL's ability or performance. However, the Court finds that, while the hourly rate for partners, associates and legal assistants that ECL sets forth in Exhibit B to Plaintiffs' Petition may be justified in the typical case, this case is not a typical one. Once the Decree was entered, it was the named plaintiffs, rather than plaintiffs' counsel, who performed most of the action to enforce it. For example, the motion to enforce the Agreement was initiated by plaintiffs, not ECL. Further, plaintiffs, not ECL, visited Mount Glenwood Memory Gardens South and Mount Glenwood Memory Gardens West on numerous occasions and took photographs to determine if defendants were complying with the Decree. *See also* Paragraph 4, Plaintiffs' Petition. It appears that ECL merely reviewed the photos and talked with the named plaintiffs to determine whether the Decree was being complied with by defendants.

### B. Associates

To determine the amount of fees that the Court will grant, the Court will first look at the fees requested for associate Julie Cobalovic. The Court notes that the overwhelming majority of the work performed by ECL after the signing of the Decree was done by Ms. Cobalovic. For Ms. Cobalovic, ECL seeks approval of a rate of

$190.00/hour. In support of this rate, Plaintiffs have provided the Court with evidence of fees awarded to other associates of ECL by other courts, a declaration from Daniel Edelman attesting to the firm's hourly billing rates, and the Laffey Matrix, a matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks, prepared by the Civil Division of the United States Attorney's Office for the District of Columbia.

In contesting the amount of fees that plaintiffs seek, defendants present no evidence whatsoever as to what constitutes a reasonable rate for Julie Cobalovic, or any of the attorneys or legal assistants at ECL. Indeed, defendants' entire response to plaintiffs' petition boils down to an argument that "a large award of fees for implementation of something that was not accomplished would not make sense. These Defendants could understand if the Court would award the Plaintiff's the sum of $2,000,00 for accomplishing this task. Anything more would be a reward as opposed to an actual reimbursement for fees earned."

Therefore, the Court accepts Ms. Cobalovic's rate as reasonable. However, the Court will award only those fees that are properly documented and reasonable. As noted by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F. 2d 714, 717 (5th

Cir. 1974), "non-legal work may command a lesser rate. Its dollar rate is not enhanced just because a lawyer does it."

The Court has carefully reviewed the more than 250 entries for Ms. Cobalovic, ranging from .1 hours to 5.5 hours. The Court will not recite each entry, one by one, because the Court finds that so many of them are unreasonable, as they refer to non-legal work performed by Ms. Cobalovic. For example, listed for Ms. Cobalovic are tasks such as "(took call) with client Haire" (May 8, 2001), "took call from paper re status of settlement" (August 21, 2001), "took call from attorney handling similar case against defendant"(August 21, 2001), "more pictures in from plaintiffs"(June 18, 2002) and "call from Tribune"(July 9, 2002). These entries are representative of many entries which reflect work of a non-legal nature. Moreover, the named plaintiffs were quite vigilant in attempting to ensure that the settlement agreement was complied with. In this regard, some of the named plaintiffs visited the cemeteries on an almost weekly basis and would call Ms. Cobalovic with their complaints that certain improvements had not been made. Consequently, almost one-third of the entries made by Ms. Cobalovic were for telephone calls to and from the named plaintiffs regarding their complaints, many of which turned out to

be erroneous. These are not legal services for which defendants should reimburse plaintiffs' counsel at its standard rates. Therefore, the Court reduces the award sought for Ms. Cobalovic by 60 percent, from $21,128.00 to $8,451.20.

As for the other Associates, the Court finds that their rates are also reasonable. However, after reviewing the entries listed in Exhibit B for the other Associates, the Court has determined that it will not award any of the fees listed for Associates Anne M. Burton, Michelle R. Teggelaar, Adam Berger or Danita V. Ivory. The billing hours entered for these associates are all for work of a non-legal nature. In addition, two of the items listed for Michelle R. Teggelaar are for work done prior to entry of the Decree.[2]

As for Associate John M. Broderick, the vast majority of the entries which make up almost seven full pages of itemized hours consist of work done by Mr. Broderick prior to the Decree. Of those items listed for work performed by Mr. Broderick after the Decree, the Court will award the only work deemed of a legal nature: his

---

[2] All of the entries listed for Associates Charles H. Lee and Christopher R. Zink are for work done prior to the Decree.

single appearance on a defendant's motion. Therefore, the Court will award him fees for one hour, or $210.00.

**C. Partners**

The Court has reviewed the requested fees for the partners, Cathleen M. Combs, Daniel A. Edelman and James O. Latturner. Here, the Court finds that the hourly rate requested, $400, is a bit excessive, as it seems higher than market rate. The Court reduces the hourly rate it will award the Partners to $350. In addition, again, the Court finds that most of the entries are for work for which the partners' hourly rates are not justified, since these items do not represent the kind of "legal work" for which the partners should be paid their standard rates. As already stated, the Court will award counsel only for work performed of a legal nature. Accordingly, the Court will award payment to Cathleen M. Combs for 5.0 hours. The Court will not award payment for her two-hour August 20, 2003 attendance at a motion and conference with clients because this was counsels' motion to withdraw ECL as plaintiffs' counsel. Defendants should not have to pay for fees arising from a dispute between ECL and its clients. However, the Court will award payment to Ms. Combs for 5.0 hours, for the September 3, 2003, hearing; to Daniel A. Edelman for 12.5 hours,

(August 24, 2002, prepare clients for hearing-3.5 hours and August 26, 2002-9.0 hours); and to James O. Latturner for 1.0 hour, what the Court approximates for Mr. Latturner attending a hearing on July 10, 2002 (the entry states: "2.1 hours- July 10,2002, prepare for and attend hearing before j. keys; conf jqc, dae"). Therefore, the total amount awarded to the three partners is $6,475.00.

### D. Legal Assistants

The Court has reviewed the items listed for the legal assistants in Exhibit B to Plaintiffs' Petition and determined that the vast majority of the entries are for work of a non-legal nature. Therefore, while the hourly rates listed of $100 and $105 might be reasonable market rates, the Court reduces the amount sought for the legal assistants by 70 percent.[3] Accordingly, the Court will award ECL the amount of $3,030.30 (reduced from $10,101.00) for work done by legal assistants.

### E. Costs

In Exhibit C to their Petition, Plaintiffs list all of the costs accrued from December 22, 1999 through September 3, 2003,

---

[3]The items listed for legal assistants Edison Alkhas and Susan Neis, as well as one item listed for legal assistant Therese Lynch, are for work performed prior to entry of the Decree.

even though the Court has already awarded Plaintiffs fees and costs up until the signing of the Decree on June 15, 2001. The entries for costs are vague and inadequately documented, only referring to "Postage" or "Copying" or "Facsimile". Moreover, there are several entries for phone calls, and phone calls have also been included in Exhibit B, under Attorneys' Fees. Therefore, the Court is denying entirely Plaintiffs' request for additional expenses.

## Conclusion

Plaintiffs are entitled to an additional award of reasonable attorneys' fees. However, the majority of the entries in Exhibit B to Plaintiffs' Petition reflect work that is not the type of legal work for which plaintiffs' counsel should be compensated at their standard rates. Therefore, the Court has reduced the award sought by plaintiffs in order to only award plaintiffs' counsel Edelman, Combs & Latturner for the legal work expended on behalf of the plaintiffs after the signing of the consent decree.

IT IS THEREFORE ORDERED that Plaintiffs' Fee Petition be, and the same hereby is, GRANTED IN PART AND DENIED IN PART. The Court awards plaintiffs additional attorneys' fees in the amount of $18,166.50.

Dated: February 11, 2004    E N T E R:

*Arlander Keys*
ARLANDER KEYS
United States Magistrate Judge